# H. Croushore et al., Admrs., Plffs. in Err., *v.* F. W. Knox.

A claim for the interest of a debt, the principal of which has been paid, will be barred by the statute of limitations unless admitted or sued for within six years.

In 1866 Painter gave Knox a power of attorney to sell land and agreed to allow him commissions. In 1871, sometime after September 1, Knox accounted to Painter, showing a balance due Painter, and on May 7, 1878, admitted by an account rendered Painter, that he had theretofore received money from another sale, and on May 7, 1878, as he claimed, paid Painter's agent all that was due Painter, but paid no interest. Painter died in 1880, and in assumpsit, begun May 31, 1883, by his administrators against Knox for interest and for commissions which Knox had deducted (alleging that Knox had used the money, while he had it, in speculation for his own profit), Knox relied principally on the statute of limitations. The money received by Knox from sales of lands was received by him more than six years before suit brought. Painter's administrators introduced numerous letters from Knox to Painter in which they claimed that Knox admitted that he was still indebted to Painter. The case was referred to a referee, under the act of February 23, 1870, and he found for Knox. *Held,* that the statute of limitations was a good defense in the absence of satisfactory proof of Knox's admissions.

(Argued May 9, 1887. Decided May 23, 1887.)

July Term, 1886, No. 168, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Potter County to review a judgment for defendant entered on the report of a referee. Affirmed.

This was an action of assumpsit begun May 31, 1883, by H. Croushore, M. L. Painter, and J. B. Blyholder, administrators *c. t. a.* of the estate of Israel Painter, deceased, against F. W. Knox.

By agreement the case was referred to R. Brown, Esq., under the provisions of the act of February 23, 1870, who reported, *inter alia,* as follows:

On March 7, 1866, Israel Painter, the plaintiffs' testator, and Thomas Collins, executed and delivered to F. W. Knox, the defendant, a power of attorney, authorizing him to sell and deliver contracts in writing, and receive the purchase money for

NOTE.—For acknowledgments sufficient to toll the statute, see note to Mayfarth's Appeal, 1 Sad. Rep. 14.

the lands and interests in lands described in the power of attorney. It was also agreed in parol, at the same time, that Knox was to receive (as compensation for selling) 5 per cent on the price, and for collecting also 5 per cent for such moneys as he should collect, and expenses incurred in examining the lands, etc.

Timothy Ives had previously agreed to sell, by contract in writing, to James V. & H. Brown, and had received a part of the consideration therefor, certain lands in which Israel Painter and Thomas Collins had an interest; and Knox was employed by Painter and Collins to go to Williamsport and arrange the matter with the Browns, and secure from them the amounts due and unpaid from them for the interests of Painter and Collins in the Ives contract.

On July 8, 1867, Mr. Knox rendered a statement of land sold for Painter, Collins, Judd, and himself, and the payments made to and for them.

Subsequently, without date, but after September 2, 1871, he rendered another statement of his accounts with Painter and Collins, including his receipts, disbursements, and payments.

About the same time, or soon thereafter, but without date, he rendered an account with Painter, showing the money he had received for Painter, and from whom received, and his payments to, and disbursements for, Painter.

In that statement Knox charges him with the sum of..$15,691 70
Credits himself with ........................ 11,171 02

Balance in favor of Painter.................... $4,520 68
    May 7, 1878, defendant charged himself,
Money received from sale No. 1...... $798 00
Interest ...................·........ 203 50       1,001 50

                                                  $5,522 18

Defendant paid, February 18, 1878............. $1,200 00
May 7, 1878, to M. L. Painter.................. 3,095 36
Amount collected from Brown judgment by Painter  1,226 82

                                                  $5,522 18

From this statement defendant had paid Painter all the

money he had received from him; and he so claimed when he made the last payment, May 7, 1878. If it be correct, the defendant is not indebted to plaintiffs and the finding must be for the defendant.

But the plaintiffs say that large amounts of the money collected by Mr. Knox were not paid or remitted to Painter for many years after their receipt, and upon which Knox should be charged interest. It is the duty of an attorney in fact, acting under a letter of attorney, as well as an attorney at law, to promptly notify his client of the receipt of the money for him, and to also pay it promptly on demand. If he fails to do so, I think he is chargeable with interest, after a reasonable time to remit, on the money in his hands.

Defendant, with Judge Olmstead, in 1872, purchased $5,000 of the Lymansville & Germania state road bonds for the sum of $3,916.70, each paying one half of the money, and each owning one half of the bonds. These bonds were dated July 10, 1872, and were payable in two, four, six, and eight years from their date, with interest at 7 per cent per annum. It is in evidence by the letters and declarations of the defendant that the purchase of his one half of the bonds was made with the money of the plaintiffs' testator, then in the defendant's hands; and that, therefore, he is the trustee of the plaintiffs' testator, so far as these bonds are concerned. It is claimed by the plaintiffs that the bonds having been purchased at a discount, and having been paid defendant at their face, with the accrued interest thereon, the defendant is liable for the full amount received on and for the bonds, less the cost of their purchase; that the defendant, as trustee of the plaintiffs' testator, cannot speculate with the funds, but must account for all that is made out of the operation. Such seems to be the law.

The money from the sale of lands, and that received from Brown's and Ives' estate was received by the defendant more than six years before this suit was brought. The statute of limitations prevents any recovery therefor unless the defendant has acknowledged the indebtedness, or promised to pay it within the six years. I am unable to find the evidence, either in the defendant's letters, or in his conversation with M. L. Painter at the time the last payment was made, which relieves the case from the operation of the statute under the rule in Landis v. Roth, 109 Pa. 621, 58 Am. Rep. 747, 1 Atl. 49; Burr v. Burr, 26 Pa. 284;

Miller v. Baschore, 83 Pa. 356, 24 Am. Rep. 187; Palmer v. Gillespie, 95 Pa. 340, 40 Am. Rep. 657, and Mayfarth's Appeal, 1 Sad. Rep. 14.

This view would be decisive against the plaintiff were it not for the fact that some of the bonds, which I think were purchased with the money of the plaintiffs' testator, and for the full amount of which the defendant must account, matured within six years of the time this suit was brought. Although not all the bonds were put in evidence, it is proven that they were dated July 10, 1872, and were payable two, four, six, and eight years from their date. Assuming that they were payable in equal proportions, the third instalment was due July 10, 1878, and the fourth, two years thereafter; both of which are within the six years, being $625 and interest at 7 per cent per annum, in six years from July 10, 1872, and a like sum at the same rate of interest, in eight years from that time.

(The referee then proceeded to calculate the amount due by the defendant, in accordance with the foregoing principles, and found it to be $2,511.19; after which he recapitulated his findings of fact and declared the following findings of law:)

1. [That the defendant may retain from the balance in his hands the sums agreed upon for his services in selling the lands and collecting the money.][1]

2. That he is liable to the plaintiffs for all sums received for the Lymansville & Germania state road bonds, less the amount paid therefor.

3. [That the statute of limitations relieves him from the payment of all moneys received by him prior to the 31st day of May, 1877, whether from the bonds of the Lymansville & Germania state road or otherwise.][6]

4. That the statute does not relieve him from the payment of such of said bonds as fell due subsequent to the said 31st day of May, 1877, and the interest thereon to the time of the referee's report.

The plaintiffs submitted the following points *inter alia:*

1. That F. W. Knox, the defendant, by reason of his retention of the moneys of Israel Painter, in his hands, for the length of time and under the circumstances disclosed by the evidence, has forfeited all right to any commissions, either on the sales of lands or collections of moneys for the said Painter; and in

making up his judgment the referee should not allow the said defendant any compensation whatever for services rendered in and about making sales or collecting any of the moneys received by him on account of said Painter.

*Ans.* Refused.

2. That the said plaintiffs are entitled to recover interest, on the balance of moneys remaining in said defendant's hands, from year to year; and that, in making up his judgment, the referee should allow the plaintiffs interest on said balances.

*Ans.* Affirmed, except so far as affected by the statute of limitations.

4. That said defendant, having declared in his letters to plaintiff, in the early part of the year 1878, that said bonds were not paid, but would all become due between February and July of that year, and more than $2,500 of said bonds, by the terms thereof, being made due and payable, in July, 1878, and before that date, the presumption, in the absence of evidence to the contrary, is that said bonds were paid in July, 1878, and the defendant is therefore liable in this suit for the amount of principal and interest due on said $2,500 of bonds in July, 1878.

*Ans.* Refused.

5. That the correspondence referred to, and payments made by defendant, in plaintiffs' request for finding of facts, No. 7, are sufficient evidence of promise to pay, and of payment on the balance due plaintiff, to toll the statute of limitations pleaded by the defendant in this case, and the plaintiffs are entitled to recover any balance of moneys and interest thereon that may be found in the defendant's hands, notwithstanding the plea of the statute.

*Ans.* Refused.

The plaintiffs' request for finding of facts, No. 7, referred to in this point is as follows: "That some time after April, 1871, the defendant sent or gave the plaintiff a statement containing the amount of moneys received by said defendant, and payments made by him on account of said plaintiff (which statement was put in evidence and marked plaintiff's exhibit 'C'), which showed a balance of plaintiff's moneys in defendant's hands of over $4,000; that subsequently, and prior to March, 1878, a correspondence was carried on between the said parties in reference to the moneys in defendant's hands belonging to the plaintiff, and that said correspondence, and especially the letter of

defendant dated February 10, 1877 (plaintiffs' exhibit 'K'), referred to said statement, and that the payment by defendant to plaintiff of $1,200, in letter of February 18, 1878 (plaintiffs' exhibit 'P'), was made upon the balance shown to be due the plaintiff by said statement."

The defendant submitted the following point:

"That there are no acknowledgments, promises, or payments made by F. W. Knox within six years prior to the bringing of the above suit, sufficient in law to take the plaintiffs' claim out of the effect of the statute of limitations, and that the statute of limitations is a bar to the recovery by the plaintiffs in this suit."

Affirmed, with an exception of $2,511.19, but afterward affirmed absolutely.

Exceptions were filed by both parties, and subsequently the referee filed the following supplementary report:

Having heard the counsel for the respective parties on their exceptions to the report filed February 15, 1886 [I now think I was in error in holding that the defendant was the trustee of the plaintiffs' testator for the bonds of the Lymansville & Germania state road, and that the statute of limitations did not protect the defendant from recovery of the money realized from that portion of the bonds which matured within six years of the commencement of this suit].[8]

There was no agreement between the parties that such purchase should be made, but having purchased them with the funds of the plaintiffs' testator, then in his hands, he put himself in a condition to be made such trustee by the plaintiffs' election. Election is a mode of contracting and therefore must take place between the parties. Downey v. Gerrard, 3 Grant Cas. 64.

The letters of the defendant to the plaintiffs' testator are very indefinite, and do not, in fact, state that these bonds were the papers which he had purchased. Although I, as referee, might find from these letters that the Lymansville & Germania state road bonds were purchased with the money of the plaintiffs' testator, and that these were bonds referred to in the letters, still there is no evidence that the plaintiffs' testator elected to take them, or to hold the defendant as his trustee therefor. The bonds were purchased in July, 1872, without agreement between the parties that the purchase was made for Painter, and he was

informed as early as January 1, 1878, that a purchase had been made. He could then have elected to take them, being within six years of the purchase, and the defendant would have then held them as his trustee, and been bound to account for the money on that portion of them which matured within the six years of the commencement of this suit, and the statute of limitations would not bar a recovery.

[Painter's neglect to make such election within that period deprives him of the right to claim the bonds, and relieves defendant from the position of trustee for them, under the rule in the above-cited case and same case in 24 Pa. 52.][8]

I cannot find, under the case of Fleming v. Culbert, 46 Pa. 498, that the investment of the defendant was such a fraudulent concealment as will prevent the running of the statute of limitations from the time the money collected was demandable.

[I therefore reluctantly hold that the money received from the bonds within the six years from the commencement of the suit does not relieve the case from the effect of the statute of limitations][8] but the statute commences to run from the receipt of the money with which they were purchased, and thus protects the defendant from the recovery of the whole of the plaintiffs' claim.

All the exceptions filed by the parties which are in accordance with this view of the case are sustained, and those inconsistent therewith are overruled.

The referee, therefore, awards and directs a judgment to be entered in favor of the defendant, and against the plaintiffs for costs.

Judgment accordingly.

The assignments of error specified 1, 6, and 8, the portions of the report inclosed in brackets; 2, 3, 4, 5, and 7, the answers to the points quoted: 9, 10, and 11, the action of the referee in awarding judgment to the defendant.

Plaintiffs' exhibits J to Q, respectively, were as follows. They were all signed "F. W. Knox."

Coudersport, Pa., Jan. 15, 1877.

Dear Sir: Last Saturday, I received a letter from you dated Jan. 1. Have received no other; we have not had any mail for nearly ten days, until Saturday last. If you wrote me before,

it may come along yet. We have the deepest snow of years. I will certainly send you some money in very short time and pay you in full within six months. I have issued a great many executions, and am going to close up all my matters. We are now going through a terrible ordeal, one that will try the very foundations of our government.

Coudersport, Pa., Feb. 10, 1877.

Dear Sir: I have been unfortunate in indorsing for a merchant in this county, amount $9,000 that I have got to pay, and will lose likely, about one half; but before I do anything to secure that debt, I make you this proposition: Will add interest to the statement that I gave you, make it in payments, pay $1,000 every four months, until paid, except the first; that made payable, Aug. first; then every four months until all is paid, I to give you judgment note, you to enter the same. There is no judgment against me, and I never expected to have one. I have due me in judgment contracts, etc., $55,000, and, I think, $75,000 in lands and no liens on it. It will then be settled; you will, as I desire above all things that you be secure, and I will know what to meet. If you accept of this, will draw up and send judgment note as stated above and send you; you can enter.

Coudersport, Pa., Jan. 1, 1878.

Dear Sir: Your letter reached me a few days since. On the first of February I will begin to pay to you, and pay monthly until all is paid, interest and all, although I should never have put your money in state road bonds, if you had answered me when I sent you money. The bonds all become due between Feb. and July next, and the money and interest you shall have. I expect to be in Pittsburg before the end of the month, as have hearing before district court there, and will come and see you if not able to come to Pittsburg. Will know in about one week. Near your lands in Cameron County they are putting down several oil wells. Years ago they put down one near and found a little oil at 600 feet, now they are going down 1,500 feet and are down in one well 500 feet and report first sand. I will keep you booked up. Your money I have all in safe bonds and you will get your pay this winter and spring. I, too, have all the latter part of summer and fall been sick, but am very well again. If it is important I will meet you and Collins, but I will certainly be in Pittsburg soon.

Coudersport, Pa., Jan. 24, 1878.

Dear Sir: I can't go to Philadelphia to-day; any day next week can meet you at Harrisburg or Williamsport; still there is no use of meeting; you can look over our account, after I get it partly paid. Will pay during February quite a payment; all your bonds come due before July; there is really now nothing going to Collins; but if you desire will meet you next week.

Coudersport, Pa., Jan. 29, 1878.

Dear Sir: The inclosed letter came back to me last night. I send it that you may see I answered you; also sent telegram. In a very few days you shall have some money, and every cent I owe you before the end of spring. This is the year when tax paper is taken up, and all your money is safely invested in that. I will get part of the money before the end of the month. I mean this shall be so.

Coudersport, Pa., Jan. 30, 1878.

Dear Sir: Your telegram reached me this A. M.— a letter would as soon if mailed Monday. Next week I can and will send you some money, and then quite often until all is paid.

Coudersport, Pa., Feb. 18, 1878.

Dear Sir: Herewith find draft for $1,200—to apply on balance due you. Will you send receipt? I will send again in March. All will be paid in a few weeks. Please answer.

Coudersport, Pa., March 1, 1878.

Dear Sir: Your kind letter is at hand. I can, I feel certain, convert about $2,000 of your paper during the next few weeks and will. Have tried to-day to sell them but could not. All will be paid by July 1st. I have never paid draft drawn upon me and never will. If you can use my notes or note payable as I will likely get funds, this I can send.

*Larrabee & Lewis,* for plaintiffs in error.—The retention of money by an attorney is a flagrant breach of trust; and where he receives money for his client, and neglects or refuses for a length of time to render an account of, or pay it over, he forfeits all right to claim compensation for his services. Bredin v. Kingland, 4 Watts, 420; Fisher v. Knox, 13 Pa. 622, 53 Am. Dec. 503; Balsbaugh v. Frazer, 19 Pa. 95.

An unfaithful trustee will not be allowed commissions. Robinett's Appeal, 36 Pa. 174; Norris's Appeal, 71 Pa. 106; Seguin's Appeal, 103 Pa. 139; Stehman's Appeal, 5 Pa. 413; Smith's Appeal, 47 Pa. 424.

This contract having been made prior to the rendering of the services, we can see no difference between this and a case in which the commission was claimed under an implied contract, or commissions allowed by law.

Why is an attorney's duty to his client any more sacred, or the breach of it any more flagrant, in an implied, than in an express contract?

The referee, in his answer to the plaintiff's second point, admits the general principle that the defendant would be liable for interest upon the amount remaining in his hands, from year to year; yet he refuses to allow interest for the reason, as he says in his third finding of law, that the statute of limitations relieves him from the payment of all money received by him prior to May 31, 1877.

Interest is due whenever a liquidated sum is unjustly withheld, and is a legal and uniform rate of damages, allowed when payment is withheld after it has become a duty to discharge the debt. Minard v. Beans, 64 Pa. 411; Norris's Appeal, 71 Pa. 106; Stearly's Appeal, 38 Pa. 525; Re Dyott, 2 Watts & S. 557; Witman's Appeal, 28 Pa. 376.

The balance of a stated account bears interest from its date. McClelland v. West, 70 Pa. 183.

Having expressly promised, as we claim, to pay the balance due upon said statement, and having made a payment of $1,200 thereon, the debt was renewed, with all its legal rights and incidents, including interest and the forfeiture of his commission; and the defendant could not afterwards limit his own liability, or deprive Colonel Painter of the right to recover every dollar, both of principal and interest.

The identification of the debt in this case is much more explicit, clear, and satisfactory than in the cases relied upon by the referee.

In Landis v. Roth, 109 Pa. 621, 58 Am. Rep. 747, 1 Atl. 49, the note upon which suit was brought was not present at the conversation relied upon to toll the statute; it was referred to, by neither amount nor date; and the only evidence of the conversation was that of the plaintiff.

In Burr v. Burr, 26 Pa. 284, the evidence was that of a single witness, the daughter of the plaintiff; the note was not present at the time of the alleged payment of interest; it was neither referred to by date nor amount; and no express promise to pay it was made. There was merely a small payment of interest upon a note, not specified.

In Miller v. Baschore, 83 Pa. 356, 24 Am. Rep. 187, the letter of the defendant, the only evidence relied upon to prove a new promise, referred to "balance of a note I owe you." The note was not identified in the letter by date, amount or otherwise.

In Palmer v. Gillespie, 95 Pa. 340, 40 Am. Rep. 657, the court below was reversed for saying to the jury that in order to make the defendant liable "he should make an actual promise to pay within the six years, should admit it and say he would pay it before he would now be liable therefor;" and a *venire facias de novo* was awarded, although the evidence of a new promise was that of the plaintiff alone, was denied by the defendant, and the identification and promise were neither as specific, clear nor satisfactory, even if it had not been contradicted, as in the case at bar.

In Mayfarth's Appeal, 1 Sad. Rep. 14, at the conversation in which the alleged acknowledgment occurred, the note was not produced, nor was it referred to by date, amount or balance due thereon, the only specification being a note.

In neither of these cases cited was the note, or evidence of indebtedness upon which the plaintiffs' claim was founded, afterwards produced to or admitted by the defendant to be correct; nor did he, as in the case at bar, claim credit on the debt in suit, for a payment made within six years of the action. Had such been the case, can there be any doubt that the question of identity of the debt would have been decided in favor of the plaintiffs?

To take a case out of the statute of limitations it is not essentially necessary that the promise to pay should be actual or express. A clear, distinct and unequivocal acknowledgment of a debt is sufficient. It must be an admission consistent with a promise to pay. Palmer v. Gillespie, 95 Pa. 340, 40 Am. Rep. 657; Yaw v. Kerr, 47 Pa. 333; Patton v. Hassinger, 69 Pa. 311; Yost v. Grim, 116 Pa. 527, 8 Atl. 925.

The statement of an account is a clear admission of a precise

indebtedness in answer to the statute of limitations.    McClelland v. West, 70 Pa. 183.

An offer by the defendant to give a new note, in the place of one barred by the statute, is such a clear and unequivocal acknowledgment as will take the case out of the statute.    Frey v. Holben, 11 W. N. C. 349.

A payment on account of an existing debt is an unequivocal acknowledgment and will take it out of the statute of limitations.    Barclay's Appeal, 64 Pa. 69; Wesner v. Stein, 97 Pa. 322.

The bar of the statute of limitations may be avoided by proof of fraud in the defendant, which has prevented the plaintiff from asserting his rights, until a period beyond the time limited by the statute.    Marsden v. Marsden, 15 Phila. 80; Harrisburg Bank v. Forster, 8 Watts, 12; Bricker v. Lightner, 40 Pa. 199; Hughes v. First Nat. Bank, 110 Pa. 428, 1 Atl. 417.

Any conduct or declarations of the defendant, tending to mislead the plaintiff and throw him off his guard, although made in good faith, will prevent the running of the statute.    Morgan v. Tener, 83 Pa. 305; Wickersham v. Lee, 83 Pa. 416.

The referee reports that he cannot find under the case of Fleming v. Culbert, 46 Pa. 498, that the investment of the defendant was such a fraudulent concealment as will prevent the running of the statute, etc.

It is not the investment, but the statements of the defendant that the bonds will become due between February and July, 1878, that is claimed as the fraudulent concealment.    These letters of the defendant clearly show that they were in answer to letters of Colonel Painter, asking for money and inquiring why it was not paid; and such statements as were made by the defendant were either fraudulent and clearly tended to mislead Colonel Painter, or they were true; and if true, then the defendant has received the money on $2,500 of the bonds of plaintiffs' testator, within six years of the bringing of this suit, and the plaintiffs are entitled to recover the same, with interest.

If a trustee or other person acting in a fiduciary relation, employs another's property or money in a speculation, there will be a constructive trust as to the profits so made for the benefit of the owner standing in the opposite relation.    Manual of Eq. Jur. p. 176; Norris's Appeal, 71 Pa. 106.

An election to confirm or avoid the acts of a trustee may be

made by bringing suit.   Boerum v. Schenck, 41 N. Y. 189;
Leisenring v. Black, 5 Watts, 303, 30 Am. Dec. 322.

A widow may make her election under her husband's will by
commencing an action to recover a mortgage, the subject of
the bequest.   Schweitzer v. Stoeckel, 4 Phila. 281.

A landlord to whom a tenant owes both rent and an account,
and who has received payments generally, without application
by either party, by issuing a distress for the rent, without ap-
plying any of the payments thereon, thereby elects to apply the
payments on the account, in an unmistakable manner.   Gar-
rett's Appeal, 100 Pa. 597.

*M. F. Elliott* and *Benson & Dornan,* for defendant in error.
—The referee having found as a fact, the evidence being undis-
puted on that subject, that the moneys were received by de-
fendant more than six years before this suit was brought, it
follows, as held by the referee, that the statute of limitations
prevents a recovery, unless the defendant has, within the six
years, made such an acknowledgment or promise as would legal-
ly take the case out of the operation of the statute.   Now, the
suit was brought on the 31st of May, 1883, and any acknowledg-
ment or promise to take the case out of the statute must have
been made within six years previous to that time, or on or after
May 31, 1877.   If this be so, the letter of February 10, 1877
(plaintiffs' exhibit "K"), must be considered as practically
out of the case, so far as this question is concerned.   But we
find that, even if written late enough in time, it is totally in-
sufficient under the decisions hereinafter quoted to affect the
running of the statute.   It refers to no specific statement, and
gives no means of identification of the statement it alludes to,
either as to date, nature of claim, or any other means.

The evidence shows that the defendant made several state-
ments to Israel Painter, all previous to this letter, but at dif-
ferent standings of their accounts.   It does not identify which
one of these statements is meant, if either of them; or it may
have referred to a statement concerning an entirely different
indebtedness than the one in suit.   The attempt to prove which
statement this letter alludes to by a reliance upon the fact that
the defendant long afterwards said a certain statement was cor-
rect, when he paid all he alleged he owed on it, must be un-
availing, for that not only does not identify what statement was

meant by the letter, but it could have no legal effect if it did. It could not relate back and breathe life into the letter so as to make it legally operative from its date, when it had for years been in itself inoperative for want of reference to any certain indebtedness. Hobough v. Murphy, 114 Pa. 358, 7 Atl. 139.

A naked admission of an indebtedness, without indicating the amount of the debt or of the promised payment, or of the nature of the claim, will not prevent the bar of the statute. Shitler v. Bremer, 23 Pa. 413.

Any uncertainty in the identification of the debt is fatal to the plaintiff's recovery. Burr v. Burr, 26 Pa. 284.

There must be no uncertainty as to the particular debt; the acknowledgment must be so distinct and unambiguous as to remove hesitation as to the debtor's meaning. Palmer v. Gillespie, 95 Pa. 340, 40 Am. Rep. 657.

The promise will not operate to remove the bar of the statute, unless the debt is so clearly identified and so distinctly acknowledged as to be beyond doubt. Landis v. Roth, 109 Pa. 621, 58 Am. Rep. 747, 1 Atl. 49; Painter's Appeal, 3 Sad. Rep. 480; Mayfarth's Appeal, 1 Sad. Rep. 14; Wolfensberger v. Young, 47 Pa. 516; Miller v. Baschore, 83 Pa. 356, 24 Am. Rep. 187.

It makes no difference that there was no evidence of the existence of any other indebtedness between the parties. Landis v. Roth, 109 Pa. 621, 58 Am. Rep. 747, 1 Atl. 49.

An acknowledgment and offer to pay the principal of a debt coupled with a refusal to pay the interest takes the principal out of the statute but not the interest. Graham v. Keys, 29 Pa. 189.

The whole case is a question of interest, which the plaintiffs attempt to charge the defendant with, the defendant having paid up in full all the moneys collected and all the interest he ever expected to pay, and the plaintiffs trying to charge him with extra interest and drag such charge from behind the bar of the statute of limitations on the ground of acknowledgments or promises, although the defendant never expected to pay such interest, and always denied his liability to pay it.

The plaintiffs are concluded by the referee's finding of fact on the subject of the statute; for if this case were tried before a jury, all that the plaintiffs would be entitled to, in any event, would be that the jury should find upon the fact whether there

were acknowledgments made by the defendant in his letters or in his conversations,—the court explaining the rule to the jury,—and if the jury found there were no such acknowledgments their finding would have been conclusive.

And the referee being unable to find the evidence, either in the defendant's letters or in his conversations, relieves the case from the operation of the statute under the ruling in Landis v. Roth, 109 Pa. 621, 58 Am. Rep. 747, 1 Atl. 49; his finding is as conclusive as the verdict of a jury. Brown v. Dempsey, 95 Pa. 243.

The fact that the referee also finds, as matter of law, that the statute relieves the defendant from the payment of all moneys received by him prior to the 31st day of May, 1877, whether from the bonds of the Lymansville & Germania state road, or otherwise, does not impair the effect of the above finding of fact by him.

This investment, it is expressly decided in Fleming v. Culbert, 46 Pa. 498, did not have the effect of arresting the continuous running of the statute, and the statute continued to run against all the moneys, including the moneys invested in the bonds. But as to the moneys invested in the bonds, the plaintiff acquired, from that investment, the incidental right, arising from his right to have or collect the money so invested, to take the bonds in which the money had been so invested instead of the money itself, if he desired or deemed it to be to his advantage so to do. Such an election, if made, would make the defendant the trustee of the bonds for the plaintiff. Downey v. Garard, 24 Pa. 52, 3 Grant Cas. 64; Eshleman v. Lewis, 49 Pa. 416, 417; Ward v. Brown, 87 Mo. 468; Beardsley v. Root, 11 Johns. 467.

But even if the right to elect to take the bonds instead of the money could exist, independent of the right to collect the money, the statute certainly commenced to run against that right of election from the time that the bonds were purchased in July, 1872, at the latest (Downey v. Garard, 24 Pa. 52), and then must have closed down as a bar in July, 1878, and the bar have remained from that time; for what is there in the defendant's letters to prevent the running or bar of the statute as to the right of election?

But if it were, for the sake of the argument, to be admitted that these letters had the effect of preventing the running of

the statute as to the right of election to the times they were written, it would then commence to run again, and how would the plaintiffs' case be helped? The last of these letters was written February 18, 1878. There had been no election or word looking towards an election by Mr. Painter up to that time, nor is there a word said on the subject, on May 17, 1878, when Mr. Painter's son settled with the defendant, being sent by his father so to do.

Bringing this suit was not an election.

An express election is made by some single unequivocal act of the party, accompanied by language showing this intention to elect, and the fact of his electing in a positive, unmistakable manner. Pom. Eq. Jur. § 514.

As an election is necessarily a definite choice by the party to take one of the properties and reject the other, his conduct, in order that an election may be inferred, must be done with an intention to elect, and must show such an intention. The intention, however, may be inferred from a series of unequivocal acts. Id. § 515.

An election must be by an unequivocal act. Beatty v. Byers, 18 Pa. 105; Evans's Appeal, 63 Pa. 183; Hoke v. Leman, 8 Serg. & R. 260; Anderson's Appeal, 36 Pa. 476.

Where an action can be attributed to an intention to take one course as well as to an intention to take the other, it will not constitute an election. Padbury v. Clark, 2 Macn. & G. 298.

PER CURIAM:

The only substantial question in this case arises under the plea of the statute of limitations. The age of the claim is such that the statute constitutes a good defense unless the plaintiffs prove some admission to avoid the effect thereof. Unfortunately for them the defendant did pay all that he admitted to be due or unpaid. The effort now is to recover something that he did not admit that he was in any manner liable for, but which the plaintiffs allege he was once liable for and for which he ought to have admitted that he was still liable. This is rather a novel way of avoiding the effect of the statute, and there was no error in holding it to be a bar to the plaintiffs' right to recover.

Judgment affirmed.